UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DONTE McCLELLON,

              Plaintiff,

-against-

LEMONADE INSURANCE COMPANY;
LEMONDATE INSURANCE AGENCY LLC,

              Defendants.

1:24-CV-8617 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Donte McClellon, who appears *pro se* and filed this action while he was incarcerated in the Federal Correctional Institution in Otisville, New York (FCI Otisville),[1] brings this action asserting the following claims:

> (1) breach of contract; (2) breach of implied covenant of good faith; (3) unfair claims handling practices; (4) fraud and misrepresentation; (5) violation of [Section 349 of the New York General Business Law]; (6) violation of the pledge; (7) invasion of privacy; (8) violation of the New York Consumer Protection Act . . . ; (9) forgery; (10) identity theft; (11) oppression; and (12) malice.

(ECF 1, at 1.) He sues the Lemonade Insurance Company ("LIC") and the Lemonade Insurance Agency LLC ("LIA"). In his complaint, Plaintiff seeks damages, attorney fees, and injunctive relief.[2] After Plaintiff filed his complaint, he filed a letter that he requested be construed as an amendment to his complaint; in that same letter, he seeks reconsideration of the Court's September 11, 2025 Order and also specifies that he invokes the Court's diversity jurisdiction.

---

[1] It appears that Plaintiff may currently be living in a Residential Reentry Center (also known as a "halfway house") located in Seattle, Washington.

[2] By Order dated September 11, 2025, the Court denied Plaintiff's "motion for service," and also denied his "motion to appoint counsel" and his application to the court to request *pro bono* counsel. (ECF 14.) The Court denied the latter two requests without prejudice to Plaintiff's filing another application for the court to request *pro bono* counsel should this action proceed following statutory review under the *in forma pauperis* statute, 28 U.S.C. § 1915. (*Id.*)

(ECF 15.) The Court construes that letter as a supplement (not an amendment) to Plaintiff's complaint, and understands that, with respect to this action, Plaintiff invokes the court's diversity jurisdiction to consider claims under state law.[3]

By order dated February 20, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[4] For the reasons set forth in this order, the Court dismisses the action but grants Plaintiff leave to replead his claims in an amended complaint to be filed within 30 days of the date of this order.

## STANDARD OF REVIEW

The Court must dismiss a prisoner's IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires

---

[3] In neither his complaint nor in his supplement does Plaintiff provide a mailing address for either defendant.

[4] Prisoners are not exempt from paying the full filing fee, even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

a complaint to make a short and plain statement showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2).

## BACKGROUND

In his complaint, Plaintiff alleges that he is a citizen of the State of New York. (ECF 1, at 1.) He also alleges that LIC and LIA have their "principal place[s] of business [in] and are incorporated under the laws of the State of New York." (*Id.*) In his supplement to his complaint, however, Plaintiff asserts "that his pre-incarceration domicile for diversity purposes is Washington State. . . . [and that LIC and LIA] are citizens of New York State where they are incorporated and have their principal place[s] of business." (ECF 15, at 1.)

Plaintiff alleges, in his complaint, that LIC and LIA "breached an existing insurance contract insuring [his] property and caused significant damage to [him]." (ECF 1, at 1.) He also alleges, in his complaint, that LIC and LIA:

> engaged in blatant and conscious wrongdoing in breach of [a] contract where [they] collected a treasure trove of biometric information in violation of [their] [p]ledge and participated in various and unfair and illegal claims handing practices, which include[] but [are] not limited to: fraud, forgery, misrepresentation, identity theft, defamation, privacy invasion, oppression, and malice. [LIC and LIA] released publicly and provided to the Government a Lemonade claims video . . . [that] the Government then used as evidence against Plaintiff for identifying purposes in order to successfully detain and have his bond revoked at a [b]ond [r]evocation [e]videntiary hearing held on [March 20, 2023,] in U.S. District Court.

(*Id.*) Plaintiff further alleges, in his complaint, that LIC and LIA employees "acted with specific and targeted malice, mens rea, and knowledge to entrap and destroy Plaintiff by providing an alleged Lemonade claims video to the Government in order to detain him and maliciously deny his good faith insurance claims." (*Id.* at 1-2.) He states, in his complaint, that he "was in the midst of a contentious Lemonade claims handling process with lawyers involved and then [LIC and LIA] acted malicious by releasing, in breach of [a] contract, to the Government[,] a claims

3

video to get him detained and deny the active claim." (*Id.* at 2.) In addition, in his complaint, Plaintiff states that LIC's and LIA's "illegal conduct and breach of contract by deploying AI technology and storage of biometric data is being weaponized to lockup and detain innocent people such as Plaintiff, and in turn[,] maliciously deny[] valid and good faith insurance claims[,] which has caused significant damage to Plaintiff." (*Id.*) Plaintiff also alleges that LIC's and LIA's:

> unlawful storage and misuse of [his] alleged data is ongoing. . . . [and] Plaintiff continues to be a party to an insurance contract with [them], pursuant to which he is entitled to seek coverage, and if . . . [he] seeks reimbursement under the contract in the future, [he] will be forced to submit another video to [LIC and LIA], in which case [they] will again allegedly extract and analyze [his] biometric data.

(*Id.*)

Plaintiff additionally asserts that LIC and LIA "made a representation . . .that was likely to mislead a reasonable consumer," specifically, "that [they] did not use biometric data." (*Id.*) He further "alleges an overpayment for [LIC's an LIA's] insurance policies."(*Id.*)

Plaintiff states that his:

> unsettled insurance claims . . . relate to [his] stolen travel luggage and its respective contents at the Seattle Airport in 2022, . . . and theft of his property in [his] New York apartment. [He] purchased an insurance policy that did not require [him] to relinquish [his] biometric data and received an insurance policy that did not require [him] to do so.

(*Id.*)

## DISCUSSION

**A.     Diversity subject matter jurisdiction**

The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court's jurisdiction is available only when a "federal question" is presented or, with respect to such a court's diversity jurisdiction to consider claims under state law, where the plaintiff and

defendants are citizens of different States and the amount in controversy exceeds the sum or value of $75,000. *See* 28 U.S.C. §§ 1331, 1332(a)(1). "'[I]t is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'" *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative.").

In order for the court to consider, under its original diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), claims under state law, the plaintiff must first allege that he and the defendants are citizens of different States. *See* § 1332(a)(1); *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State."). The parties' state citizenship is established at the time of the commencement of the action. *See, e.g.*, *Dery v. Wyer*, 265 F.2d 804, 808 (2d Cir. 1959) ("Generally, in a diversity action, if jurisdictional prerequisites are satisfied when the suit is begun, subsequent events will not work an ouster of jurisdiction."). For diversity purposes, an individual is a citizen of the State where he is domiciled, which is defined as the place where the individual "has his true fixed home . . . and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). An individual "has but one domicile." *Id.* Generally, for

diversity purposes, there is a rebuttable presumption that a prisoner retains his pre-incarceration domicile rather than acquiring a new domicile. *Blumatte v. Quinn*, 521 F. Supp. 2d 308, 312 n.3 (S.D.N.Y. 2007); *see Housand v. Heiman*, 594 F.2d 923, 925 n.5 (2d Cir. 1979). A corporation is, however, a citizen "of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (a corporation's principal place of business is its "nerve center," usually its main headquarters).[5] In addition, for diversity purposes, a limited liability company (an "LLC") is deemed to be a citizen of each State of which its members are citizens.[6] *See Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012).

---

[5] Section 1332(c)(1), also provides, however, that:

> in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of—
> (A) every State and foreign state of which the insured is a citizen; (B) every State and foreign state by which the insurer has been incorporated; and (C) the State or foreign state where the insurer has its principal place of business.

This "proviso is applicable when the insurer stands in the shoes of its legally responsible insured, who would traditionally be a defendant." *Rosa v. Allstate Ins., Co.*, 981 F.2d 669, 675 (2d Cir. 1992) (Section 1332(c)'s term "direct action" refers to "those cases in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer without joining the insured or first obtaining a judgment against him." (quoting *Beckham v. Safeco Ins. Co. of Am.*, 691 F.2d 898, 901-02 (9th Cir. 1982) (internal quotation marks omitted))). It "does not affect suits against the insurer based on its independent wrongs: such as actions brought against the insurer either by the insured for failure to pay policy benefits or by an injured third party for the insurer's failure to settle within policy limits or in good faith." *Id.* (footnotes omitted).

[6] "Because a limited liability company is not a corporation, the rule for determining the citizenship of a corporation is inapplicable to determining the citizenship of a limited liability company." *Laguerre v. Related Mgmt. Co.*, 1:25-CV-5594 (LLS), 2025 WL 2998053, at *2 n.2 (S.D.N.Y. Oct. 24, 2025).

There is a second component of diversity jurisdiction—the amount in controversy must be in excess of the sum or value of $75,000. *See* § 1332(a). The sum claimed by a plaintiff will control if the claim of value is made in good faith. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). The Court can dismiss a diversity action for failing to plead that the amount in controversy exceeds the sum or value of $75,000, but only if there is "a legal certainty from the complaint that the plaintiff cannot recover sufficient damages to invoke [diversity] jurisdiction." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982); *see Ochoa v. Interbrew Am., Inc.*, 999 F.2d 626, 629 (2d Cir. 1993) ("[I]n determining whether a challenged jurisdictional amount has been met, district courts are permitted only to assess the allegations in a complaint and not the validity of any asserted defenses."). "A plaintiff seeking to invoke diversity jurisdiction 'cannot[,] [however,] meet [his] burden of proof with mere conclusory allegations of indirect or speculative value.'" *Chavez v. Maker*, No. 1:18-CV-7965 (RA) (GWG), 2019 WL 4926348, at *4 (S.D.N.Y. Oct. 7, 2019) (citation omitted), *report & recommendation adopted sub nom.*, *Chavez v. Wylie*, No. 18-CV-7965 (RA), 2019 WL 6873806 (S.D.N.Y. Dec. 17, 2019), *appeal dismissed*, No. 20-383, 2020 WL 4332758 (2d Cir. May 28, 2020); *Weir v. Cenlar FSB*, No. 7:16-CV-8650 (CS), 2018 WL 3443173, at *12 (S.D.N.Y. July 17, 2018) (reasoning that "the jurisdictional amount, like any other factual allegation, ought not to receive the presumption of truth unless it is supported by facts rendering it plausible" (citation omitted)).

Plaintiff's complaint and supplement do not make clear that the parties are diverse, specifically, that neither LIC nor LIA is a citizen of the same State as Plaintiff. *See Schacht*, 524 U.S. at 388 ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.*, *only if there is no plaintiff and no*

7

*defendant who are citizens of the same State.*" (emphasis added)). In his complaint, Plaintiff states facts that would indicate that he and at least LIC are both citizens of the State of New York. (ECF 1, at 1.) If that is true, the parties are not diverse and this court lacks diversity jurisdiction to consider this action. In his supplement, however, Plaintiff alleges that he is a citizen of the State of Washington, and that both of the defendants are citizens of the State of New York because they are both incorporated in that State and have their principal places of business in that State. (ECF 15, at 1.) However, even if Plaintiff is a citizen of the State of Washington and LIC is a citizen of the State of New York (by virtue of its incorporation in that State and having its principal place of business there), because Plaintiff does not indicate the citizenships of each of the members of LIA, which Plaintiff alleges is an LLC (ECF 1, at 1), not a corporation, it is unclear whether the parties are diverse for the purpose of the court's diversity jurisdiction.

In addition, while, in his complaint, Plaintiff seeks unspecified injunctive relief and $120,000 in damages (*see id.*) and, in his supplement, he states that "[t]he statutory amount in controversy exceeds the sum or value of $75,000" (ECF 15, at 1), Plaintiff has not alleged any non-conclusory facts showing that his claims under state law satisfy the jurisdictional amount in controversy for a diversity action—an amount in excess of the sum or value of $75,000; he merely asserts that they do.

Accordingly, the Court dismisses this action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court, however, grants Plaintiff leave to replead his claims in an amended complaint in which he alleges facts showing that the court has original diversity jurisdiction to consider this action. If Plaintiff files an amended complaint, none of the defendants named in his amended complaint can be a citizen of the same State as him, and he

must include non-conclusory facts showing that his claims under state law satisfy the $75,000 jurisdictional floor amount for a diversity action.[7]

## B. Reconsideration of the Court's September 11, 2025 Order

The Court understands Plaintiff's supplement as seeking reconsideration of the Court's September 11, 2025 Order (*see* ECF 15, at 1), in which the Court denied Plaintiff's "motion for service" (ECF 4), and also denied his "motion to appoint counsel" (ECF 5) and his application for the court to request *pro bono* counsel (ECF 10) without prejudice to Plaintiff's filing another application for the court to request *pro bono* counsel should this action proceed following review under the IFP statute, 28 U.S.C. § 1915 (*see* ECF 14). The Court construes that request for relief as a timely request for reconsideration brought under Local Civil Rule 6.3.[8]

A party who seeks reconsideration must demonstrate that the Court overlooked "controlling law or factual matters" that had been previously put before it. *R.F.M.A.S., Inc. v.*

---

[7] Because *pro se* plaintiffs, including attorneys acting *pro se*, are not entitled to attorney's fees under 42 U.S.C. § 1988, *see Kay v. Ehrler*, 499 U.S. 432, 437-38 (1991), the Court denies Plaintiff's requests for attorney's fees.

[8] Generally, a motion for reconsideration must be filed within 14 days of the date of the entry of the court's order being challenged. *See* Local Civil Rule 6.3. The Court's September 11, 2025 order was issued and entered on the same date, September 11, 2025. (ECF 14.) Thus, Plaintiff had until 14 days later, or until September 25, 2025, to file a timely motion for reconsideration. Plaintiff's submission in which he seeks reconsideration is dated September 25, 2025, and was mailed by Plaintiff to the court while Plaintiff was incarcerated in the Federal Correctional Institution located in Lompoc, California (FCI Lompoc I); the envelope that contained it was postmarked September 30, 2025, and this court received it on October 3, 2025. (ECF 15.) Because Plaintiff was incarcerated at the time that he submitted his request for reconsideration, under the so-called "prison mailbox rule," the Court deems that request as filed as of September 30, 2025, the date when he presumably placed it into his then-prison's mail system for its mailing to the court. *See Houston v. Lack*, 487 U.S. 266 (1988); *see also Hardy v. Conway*, 162 F. App'x 61, 62 (2d Cir. 2006) (summary order) ("[W]e have never required prisoners to provide affidavits of service to verify when they give their documents to prison officials. Indeed, in the absence of contrary evidence, district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing." (citing cases)); *Walker v. Jastremski*, 430 F.3d 560, 562-64 (2d Cir. 2005) (discussing prison-mailbox rule).

*Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009). "Such motions must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 391-92 (S.D.N.Y. 2000); *see also SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 206, 209-10 (S.D.N.Y. 2009) ("[A] motion for reconsideration is not an invitation to parties to treat the court's initial decision as the opening of a dialogue in which . . . [the moving] party may then use such a motion to advance new theories or adduce new evidence in response to the court's ruling." (internal quotation and citations omitted)).

To the extent that Plaintiff, in his supplement, asks the Court to reconsider its denial of Plaintiff's "motion for service" and his application for the court to request *pro bono* counsel, he has failed to demonstrate that the Court overlooked any controlling decisions or factual matters with respect to why the Court, in its September 11, 2025 Order, denied those requests. Indeed, the subject matter jurisdiction defects that the Court, in this Order, has recognized as existing in Plaintiff's complaint and supplement are, in no small part, why this Court denied those requests in its September 11, 2025 Order. The Court therefore denies Plaintiff's request for reconsideration of that Order.

C.     **Leave to amend is granted**

Plaintiff proceeds in this matter without the benefit of an attorney. Federal district courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be

stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to show that the court has subject matter jurisdiction to consider his claims under state law, pursuant to the court's diversity jurisdiction, the Court grants Plaintiff 30 days' leave to file an amended complaint to provide facts showing why the court has diversity jurisdiction to consider this action.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a civil judgment dismissing this action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

## CONCLUSION

The Court dismisses this action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court, however, grants Plaintiff 30 days' leave to replead his claims in an amended complaint in which he alleges facts sufficient to show that the court has diversity jurisdiction to consider his claims under state law.[9] If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a civil judgment in this action dismissing this action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962)

---

[9] In his amended complaint, Plaintiff should provide an address where each defendant named in the amended complaint may be served.

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated: November 24, 2025
       New York, New York

                                            /s/ Laura Taylor Swain
                                            LAURA TAYLOR SWAIN
                                          Chief United States District Judge